## AFFIDAVIT

I, Durwin Ellerman, being duly sworn, depose and state as follows:

## INTRODUCTION

1.  I am currently a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). I was deputized as a federal TFO pursuant to 21 U.S.C. § 878 on September 27, 2023, and I am designated by the Attorney General, through approved delegations of authority, to execute and serve search warrants and arrest warrants issued under the authority of the United States. Accordingly, I am serving as a "federal law enforcement officer" as defined in Federal Rule of Criminal Procedure 41(a)(2)(C). Prior to working as a full-time DEA TFO, I was assigned as a Detective at the Burlington, Vermont Police Department (BPD) since November of 2019. I have been a certified full-time law enforcement officer with BPD since May of 2014.

2.  Throughout my assignments, I have investigated or assisted with the investigation of numerous illegal drugs, drug-related devices/paraphernalia and drug-related evidence. I have seized or participated in seizures of different quantities of illegal drugs, controlled substances, user paraphernalia and other assorted items, such as money and property related to or acquired through the drug trade. I have seized or participated in seizures of various types of illegal drugs/narcotics during these investigations, to include powder cocaine, cocaine base, marijuana, heroin, fentanyl, methamphetamine, and numerous types of prescription medications. I have conducted or been involved in multiple drug investigations, and from this experience, I am familiar with the trends associated with the use and distribution of illegal drugs/controlled substances. I have conducted frequent controlled purchases of illegal substances utilizing a confidential source. I have also participated in specialized training in which the primary focus was proactive criminal drug enforcement provided by the Vermont Criminal Justice Training Council. I have also attended the

40-hour Drug Enforcement Administration Basic Narcotics School. This training taught me interdiction techniques and to identify criminal drug activities.

3.  This affidavit is made in support of a criminal complaint charging Ron A. THOMAS (YOB: 2002) with distribution of a controlled substance, that being Cocaine, a Schedule II controlled substance. This affidavit sets forth facts sufficient to establish probable cause to believe that, on two occasions in May of 2024, in the District of Vermont, Ron A. THOMAS knowingly and intentionally distributed cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C).

4.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, as well as the investigation and observations of other law enforcement officers involved in this investigation. This affidavit is intended only to show that there is probable cause to believe that THOMAS committed the aforementioned offenses and does not set forth each and every fact known to me concerning this investigation. Unless indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## INVESTIGATION OVERVIEW

5.  The government, including the Drug Enforcement Administration (DEA) and the Burlington Police Department (BPD) are investigating Ron A. THOMAS and his involvement in drug distribution activities in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C), which occurred in May of 2024, in Chittenden County in the District of Vermont.

6.  In May 2024 Detective Joseph Corrow of the Burlington Police Department (BPD) spoke to a cooperating subject (CS)[1] who was interested in providing information and cooperating

---

[1] CS had previously entered into a cooperating subject agreement with the Burlington Police Department and agreed to provide active cooperating in exchange for consideration for monetary compensation. CS has criminal

2

with law enforcement. For ease of reading and confidentiality purposes this cooperating subject will be referred to as the pseudonym "CS" as well as the pronoun "it". CS was advised if it provides any false information to law enforcement that it could face criminal charges. CS previously entered into a Cooperating Subject agreement with the Burlington Police Department and agreed to provide active cooperation in exchange for monetary compensation.

7.  CS stated it was in a position to purchase "crack" cocaine and heroin/fentanyl from a male it knew as "J". CS described "J" as a black male, approximately 19-21 years old, approximately 6 feet tall, approximately 150 pounds, with short hair, and no facial hair.

8.  In May of 2024, DEA Burlington, Vermont Resident Office (DEA BRO), along with Burlington Police Department (BPD), utilizing the CS, conducted two controlled buys of cocaine, a Schedule II controlled substance, from the individual the CS knew as "J" who was later identified as Ron A. THOMAS, of Brooklyn, New York.

## PROBABLE CAUSE

### Week of May 5, 2024 Controlled Purchase

9.  During the week of May 5, 2024, a plan was formulated to have the CS complete a controlled purchase of "crack" cocaine from an individual the CS knew as "J". The CS advised law enforcement that the CS had purchased suspected "crack" cocaine from "J" in the past and not at the direction of law enforcement.

10.  During the week of May 5, 2024, The CS met with investigators at a predetermined location and was searched before, and after, the controlled purchase by

---

convictions for heroin possession, false information to a law enforcement officer, vehicle operation without owner consent, credit card fraud use, credit card fraud possession, and retail theft. In reference to the false information conviction, Detective Corrow confirmed with the originating agency that the case was expunged even though it is still showing in CS's criminal history. CS has previously provided reliable information that has led to search warrants and arrests in both State and Federal court.

3

investigators and found to have no drugs, paraphernalia, or large sums of money. The CS was equipped with an audio/video monitoring device. The CS was also provided a known amount of serialized U.S. currency to complete the anticipated transaction.

11. Under the direction of law enforcement, the CS made contact with "J" via the phone number of 802-391-7843. This phone call was recorded. During the phone call the CS agreed to purchase "crack" cocaine from "J". During the phone call, the CS arranged the drug transaction to occur at a known location in Burlington, Vermont.

12. The CS travelled with investigators to an area in close proximity to the area of the anticipated transaction. Shortly after arriving in the area, the CS separated from investigators and began travelling to the anticipated transaction location. The CS was kept under surveillance by BPD Detectives Padric Hartnett, Det. Julian Gonzalez, and Det. Joseph Corrow with the assistance of BPD Sgt. Philip Tremblay, and me as the CS travelled to the area of the anticipated drug transaction.

13. Det. Gonzalez observed and video recorded the CS make contact with a white Ford Expedition bearing NY registration LJL1721. This registration was assigned to a white 2024 Ford Expedition and was registered to a Hertz Vehicles LLC at 900 Doremus Ave, PT Newark, NJ 07114. The CS was kept under surveillance following the controlled purchase until meeting back up with Det. Harnett and Det. Corrow.

14. Upon meeting with investigators, the CS provided all of the "crack" cocaine that the CS purchased from "J". The CS stated that the CS provided "J" with the U.S. currency that the CS was provided by investigators. The CS was searched after the controlled purchase and was found to have no illegal drugs, paraphernalia, or large sums of money.

15.     Back at the BPD, Det. Corrow field tested and photographed the suspected "crack" cocaine. The substance field-tested presumptive positive for cocaine, a Schedule II controlled substance.

### Week of May 12, 2024 Controlled Purchase

16.     During the week of May 12, 2024, a plan was formulated to have the same CS complete another controlled purchase of "crack" cocaine from "J".

17.     During the week of May 12, 2024, investigators completed one controlled purchase of suspected "crack" cocaine from "J" utilizing the CS. The CS met with investigators at a predetermined location and was searched before, and after, the controlled purchase by investigators and found to have no drugs, paraphernalia, or large sums of money. The CS was monitored as it met with "J" to complete the drug transaction while the CS was equipped with an audio/video monitoring device. The CS was also provided a known amount of serialized U.S. currency to complete the anticipated transaction.

18.     Under the direction of law enforcement, the CS made contact with "J" via the phone number of 802-391-7843. This phone call was recorded. The CS negotiated the purchase of "crack" cocaine from "J". During the phone call, the CS arranged the drug transaction to occur at a known location in Burlington, Vermont.

19.     The CS travelled with investigators to an area in close proximity to the area of the anticipated transaction. Shortly after arriving the area, the CS separated from investigators and began travelling to the anticipated transaction location. The CS was kept under surveillance by BPD Detectives Padric Hartnett, Det. Julian Gonzalez, and Det. Joseph Corrow with the assistance of BPD Sgt. Philip Tremblay and me as the CS travelled to the area of the anticipated drug transaction.

20.     Det. Gonzalez observed the CS again walking in the direction of the same white Ford Expedition rental from the previous controlled purchase parked at the known location. The CS was seen making contact with "J" on the audio/video transmitter. It should be noted that "J" was observed handing the suspected crack cocaine to the CS on the video captured from the body wire worn by the CS. Det. Gonzalez observed the CS exit the white Ford Expedition following the controlled purchase. The CS was kept under surveillance following the controlled purchase until meeting back up with Det. Harnett and Det. Corrow.

21.     The CS stated that, upon meeting with investigators, the CS provided all of the "crack" cocaine that the CS purchased from "J". The CS stated that the CS provided "J" with the U.S. currency that the CS was provided by investigators. The CS was searched after the controlled purchase and was found to have no illegal drugs, paraphernalia, or large sums of money.

22.     Back at the BPD, Det. Corrow field tested, and photographed, the suspected "crack" cocaine and the substance field-tested presumptive positive for cocaine, a Schedule II controlled substance.

23.     On May 28, 2024, Corporal Jennifer Cousins of the Burlington Police Department sent an email to the BPD drug unit advising that there had been a drug tip advising of increased drug activity in the area of 396 South Winooski Avenue in Burlington, Vermont. Specifically, the tip stated that a white Ford Expedition bearing NY registration LJL1721 had been parked in the area for hours at a time. The tipster stated that people would show up, get into the passenger seat of the Ford Expedition for a short duration, then exit and leave. I recognized from my training and experience that these described interactions appeared to be short duration stops consistent with drug transactions.

24. On May 29, 2024, me, BPD Det. Corrow and BPD Sgt. Tremblay, conducted surveillance on the aforementioned white Ford Expedition. During this surveillance I video recorded "J" getting into the driver's seat and drive away. At that time, Det. Corrow had obtained a Vermont State GPS warrant for the phone number 802-391-7843. The GPS location of the phone number was consistent with my observations of "J" getting into the white Ford Expedition.

25. On May 31, 2024, at 6:17 PM, officers with the Burlington Police Department responded to 198 Main Street in Burlington, Vermont, for a report of two people that had been involved in an altercation involving a firearm. The BPD dispatch was able to utilize city cameras to observe two black males involved in an altercation and a white Ford Expedition was seen leaving the area with white out of state plates.

26. On May 31, 2024, at approximately 6:56 PM, Burlington Police Dispatch advised they had received a call from a male, P.M., who had been threatened by three black males in a white Ford Expedition bearing NY Registration LJL1721. P.M. reported that the incident took place at Perkins Pier, 1 Lavalley Lane, in Burlington, Vermont. P.M. advised that he and a co-worker, T.D., were working for Hertz Rental Car Company and had contacted the individuals in the white Ford Expedition in an effort to repossess the vehicle as it had been rented and not returned. When P.M. contacted the individuals in the vehicle and notified them that the vehicle was stolen, they attempted to drive through a barricade and pointed a firearm at him. According to T.D. the three men abandoned the white Ford Expedition and entered a black Ford Expedition bearing NY Registration LJL1654. The black Ford Expedition had also been rented from Hertz.

27. Burlington Police Dispatch began receiving GPS location data from Hertz as to the location of the black Ford Expedition. Det. Gonzalez and I located the black Expedition at

the Pearl Street Beverage located at 240 Pearl St. in Burlington, Vermont. The vehicle then left the area at a high rate of speed and on the wrong side of the road causing officers to initiate a pursuit.

28. The vehicle was eventually involved in a single vehicle crash in Colchester, Vermont, after Burlington Police officers ended the pursuit. There were five occupants of the black Expedition. Two occupants died as a result of the crash and three other occupants were detained and ultimately taken into custody. Officers located evidence of cocaine trafficking at the scene of the crash, including approximately 800 grams, including packaging, of a substance that field tested presumptive positive for cocaine.

29. One of the three surviving occupants was determined to be Ron A. THOMAS. BPD Det. Sgt. Tremblay responded to the scene of the crash due to his previous knowledge of drug distribution with the white Ford Expedition bearing NY Registration LJL1721 and "J." Det. Sgt. Tremblay immediately recognized THOMAS as "J", the male who had completed the physical hand-to-hand transactions in the above noted controlled purchases. In addition, law enforcement compared images of "J" from the body wire worn by the CS during the controlled purchases and determined that the images were consistent with known photographs of THOMAS. Further, I recognized THOMAS from the surveillance conducted on the white Ford Expedition on May 28, 2024.

30. THOMAS was found to be in possession of two cellular telephones. Back at the Burlington Police Department, I dialed the phone number used to setup the two previously noted controlled purchases; 802-391-7843. One of the two phones THOMAS was in possession of began to ring, showing an incoming call from 802-540-9999, which is a phone extension from the Burlington Police Department.

31. A review of THOMAS' criminal history showed he was arrested on January 17, 2024, for Eluding Law Enforcement Officer – Negligent Operation and Resisting Arrest #1 in Burlington Vermont. THOMAS was released on conditions in that matter on January 17, 2024. THOMAS' criminal history also showed history from Massachusetts showing a Disposition of 2024-05-28: NOLLE PROSEQUI for the charges of Stop for Police Fail, Conspiracy to Violate Drug Law, Cocaine, Trafficking In, 100 grams or More, less than 200 grams, Assault and Battery on Police Officer, Assault and Battery with a Dangerous Weapon, Resist Arrest, Unlicensed Operation of a Motor Vehicle, Speeding rate of speed exceeding posted limit, and Reckless Operation of Motor Vehicle.

32. THOMAS was arrested on May 31, 2024, and a search of his person resulted in the seizure of multiple cellphones and approximately $500.00 in cash.

33. On June 1, 2024 THOMAS was charged by criminal complaint in Vermont State Court with two counts of 18 V.S.A. § 4231(b)(1), Cocaine Sale, and a third count of 18 V.S.A. § 4231(c)(1) Cocaine Trafficking. THOMAS was released on conditions on June 3, 2024 in Case No. 24-CR-05665.

34. On June 5, 2024, members of the DEA BRO, pursuant to a Vermont state search warrant granted by the Honorable Michael Harris, conducted a search of the black Ford Expedition bearing NY registration LJL1654 at the Colchester Police Department. The following items were seized

    a. $7,066 of US currency

    b. ½ of a $20 bill located on the driver seat

    c. A digital scale located on the front passenger seat

    d. A loaded (round chambered) .25 cal Pistol Automatic Cal "635", firearm is rusted and markings are hard to decipher, magazine rusted in gun, 6 live rounds removed. The gun was located in the front passenger seat.

35. On June 5, 2024, a black trash bag, which was recovered from the immediate area of the black Ford Expedition at the crash scene, was searched via a Vermont State search warrant, granted by the Honorable Navah Spero on June 5, 2024. The following was seized;

    a. 63.1 grams including packaging (two separate packages) of a blue powdery substance and field tested presumptive positive for fentanyl.

    b. 5.5 grams including packaging of a white rock-like substance contained with corner knots and field tested presumptive positive for cocaine.

    c. 21.6 grams including packaging of white rock-like substance contained with corner knots and field tested presumptive positive for cocaine.

    d. 15.1 grams including packaging of white rock-like substance contained with corner knots and field tested presumptive positive for cocaine.

    e. 57.4 grams including packaging of a white powdery substance contained within two plastic baggies and field tested presumptive positive for cocaine.

    f. 13.8 grams including packaging of white rock-like substance contained within plastic baggies and field tested presumptive positive for cocaine.

    g. 12 grams including packaging of white rock-like substance contained within plastic baggies and field tested presumptive positive for cocaine.

    h. 15.5 grams including packaging of white rock-like substance contained within plastic baggies and field tested presumptive positive for cocaine.

      i. 2.9 grams including packaging of white rock-like substance contained within plastic baggies and field tested presumptive positive for cocaine.

      j. 1.2 grams including packaging of white rock-like substance contained within plastic baggies and field tested presumptive positive for cocaine.

36. On June 5, 2024, a blue Walmart shopping bag, which was recovered from the immediate area of the black Ford Expedition at the crash scene, was searched via a Vermont State search warrant, granted by the Honorable Navah Spero on June 5, 2024. The following was seized;

      a. Eight containers of cutting agent.

      b. 52.6 grams including packaging contained within two plastic sandwich baggies containing an off white powdery substance and field tested presumptive positive for fentanyl.

      c. Cardboard box containing glassine bags of various colors; red, purple, and white. One glassine bag has "monster high" printed on it.

      d. 74.9 grams of a blue powdery substance that field tested presumptive positive for fentanyl.

      e. 114.7 grams including packaging contained in three plastic sandwich baggies containing an off white and blue powdery substance that field tested presumptive positive for fentanyl.

37. On June 5, 2024, a white Nike backpack, which was recovered from the immediate area of the black Ford Expedition at the crash scene, via a Vermont State search warrant, granted by the Honorable Navah Spero on June 5, 2024. The following was seized;

   a. 4.5 grams including packaging of an off-white powdery substance contained within plastic baggies and field tested presumptive positive for fentanyl.

   b. Plastic sandwich baggie containing 10x "buns" of red glassine bags. Each "bun" contains 10 red wax glassine bags. The bags further contained an off white powdery substance and field tested presumptive positive for fentanyl.

   c. Plastic sandwich baggie contained 10x "buns" of red wax folds. Each "bun" contains 12 red glassine bags. The bags further contained an off white powdery substance and field tested presumptive positive for fentanyl.

   d. Plastic sandwich baggie containing 10x "buns" of red and purple glassine bags. Each "bun" contains 10 red wax glassine bags. The bags further contained an off white powdery substance and field tested presumptive positive for fentanyl.

   e. Plastic sandwich baggie contained 10x "buns" of red wax folds. Each "bun" contains 12 red glassine bags. The bags further contained an off white powdery substance and field tested presumptive positive for fentanyl.

   f. A loaded (round was chambered) Teal Ruger Security 9mm pistol with additional ammunition in the magazine located in back side pocket. The pistol was originally reported as stolen from Colchester, VT in 2023.

38. At approximately 1527 hours on October 25, 2024, officers with the BPD located a stolen vehicle on Germain Street in Burlington, VT. Officers approached the vehicle and discovered a single occupant, who then fled at a high rate of speed. Officers followed but called off the pursuit. Almost immediately thereafter the stolen vehicle struck two vehicles at the intersection of Pearl Street and Willard Street. All three of the vehicles involved were significantly damaged and one of the operators of the vehicles crashed into by the stolen vehicle

was severely injured and in critical condition. The operator of the stolen vehicle was identified as Ron A. THOMAS.

## CONCLUSION

39.     Based on the information set forth above, I believe there is probable cause that on two separate occasions in May of 2024, in the District of Vermont, Ron A. THOMAS knowingly and intentionally distributed cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C).

Respectfully submitted,

_____
TFO Durwin Ellerman
Drug Enforcement Administration

Subscribed and sworn to before me on this 26th day of October 2024.

_____
HON. KEVIN J. DOYLE
United States Magistrate Judge
District of Vermont

13